IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LISA A. TERKEURST,**

       **Plaintiff,**

v.                        **Civil Action 2:19-cv-4566**
                                       **Judge Sarah D. Morrison**
                                       **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Lisa A. Terkeurst, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff filed her current application for DIB on December 3, 2015, alleging that she was disabled beginning October 29, 2015.[1] (Tr. 261–74). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on March 27, 2018. (Tr. 58–77). On July 24, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 36–57). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

---

[1] Plaintiff previously filed an application for DIB on February 13, 2012, which was denied by administrative decision on June 23, 2014. (Tr. 132–53). The Appeals Council declined jurisdiction on October 28, 2015. (Tr. 154-58).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 14, 2019 (Doc. 1), and the Commissioner filed the administrative record on December 18, 2019 (Doc. 6). Plaintiff filed her Statement of Errors (Doc. 7) on February 3, 2020, and Defendant filed an Opposition (Doc. 11) on March 24, 2020. No Reply was filed. Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony and Statements

The ALJ summarized the testimony from Plaintiff's hearing:

> The [Plaintiff] testified, or elsewhere alleged, that she cannot work as a result of her narcolepsy and related symptoms. Specifically, the [Plaintiff] indicated that she cannot work due to sleepiness and the amount of medication she has to take to get through the day. She noted difficulty remembering things, including driving home from work or how to make iced tea, and trouble with punctuality. Since the date of the prior decision, the [Plaintiff] reported a decrease in her alertness, noting that she would zone out a lot and was less alert than she was before, which made it difficult to stay focused. She also reported symptoms of sleep paralysis and cataplexy, though she noted that the records prior to the expiration of her date last insured did not reference these complaints. For treatment, the [Plaintiff] takes medication, which she noted takes the edge off her narcolepsy; however, she reported that she had to decrease the amount of medication she takes because when she was taking more medication she had greater side effects.
>
> In a statement submitted by the [Plaintiff] in August 2016, approximately eight months after her date last insured, she reported that she: needed to sit down while doing short household tasks, depended on others to take her places, did not feel comfortable driving most of the time, and had difficulty with social activities (Exhibit B7E). In a report of contact dated January 5, 2016, shortly after the expiration of the [Plaintiff]'s date last insured, however, she reported that she was able to perfo1m self-care, shop alone, and manage her finances (Exhibit B4E). At the hearing, she also testified that she tries to do normal chores, such as laundry, and she is able to drive, though she does so approximately once a week to go to the store down the road or to attend doctor appointments. She also reported daily activities, such as sitting and watching the television and reading books, though she had some difficulty staying focused.

(Tr. 45–46).

### B. Relevant Medical Evidence

The ALJ also usefully summarized Plaintiff's medical records and symptoms related to her

2

narcolepsy:

> The records show that the [Plaintiff] complained of narcolepsy related symptoms, such as migraines, hallucinations, never feeling awake no matter how much she slept, difficulty with moving upon awakening, feeling sleepy in the late morning, and episodes of weakness when experiencing certain emotions (Exhibits B4F, B8F). Although the [Plaintiff] testified that she reported symptoms of muscle weakness to her providers, there is no indication that cataplexy was ever confirmed via diagnostic testing. For example, examination notes from the [Plaintiff]'s treating provider, Timothy Walter, M.D., repeatedly indicate that while the [Plaintiff] did have narcolepsy, her condition did not involve cataplexy (Exhibits B3F, B4F, B5F). Though there is some notation of the [Plaintiff]'s having this condition following the expiration of her date last insured, there is no diagnostic evidence to show the same, and inconsistencies remain as even after the expiration of the [Plaintiff]'s date last insured, some treatment notes continue to indicate that she did not suffer from cataplexy (Exhibit B11F). Further, diagnostically, the records indicate that the [Plaintiff] had undergone prior brain imaging, which was normal (Exhibit B8F).
>
> As for her complaints of sleep paralysis and hallucinating shadows, treatment notes from around the [Plaintiff]'s amended alleged onset date indicate that it was not clear whether the [Plaintiff] actually had sleep paralysis, or if her symptoms of struggling to move upon waking were related to sleep inertia (Exhibit B8F/27). Ultimately, it was indicated that she did not have hypnogogic hallucination or sleep paralysis (Exhibit B8F/31). The [Plaintiff] also denied having any near misses or accidents while driving due to sleepiness or drowsiness, and while treatment notes indicate that she was advised of the dangers of driving while sleepy or drowsy, her driving privileges were never restricted (Exhibits B4 F, B8F/31). Additionally, despite the [Plaintiff]'s complaints of daytime sleepiness, she indicated that she did not nap (Exhibits B2F, B8F). For treatment, the records do show that the [Plaintiff] had initially undergone an increase in medication due to the effectiveness waning, and then a decrease in medication because she felt less alert and more tired with higher doses (Exhibit B3F). Contrary to the [Plaintiff]'s complaints of decreasing alertness, however, the records indicate that she consistently presented as alert with no memory impairment noted by Dr. Walter (Exhibits B2F, B5F, B6F, B8F). For example, during her psychological consultative examination, which occurred shortly after the expiration of her date last insured, the [Plaintiff]'s sensorium and cognitive functioning upon examination suggested that she was an alert individual (Exhibit B2F). Records from even further past the expiration of her date last insured support the same, with the [Plaintiff] continuously noted to be alert (Exhibit B6F). Finally, the undersigned notes that in a report of contact dated January 5, 2016, the [Plaintiff] indicated that she had last seen her treating provider in August 2015, and did not have to go back until August 2016 (Exhibit B4E).

(Tr. 46–47).

3

### C. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement on December 31, 2015 and did not engage in substantial gainful activity during the period from her alleged onset date of June 24, 2014 through her date last insured of December 31, 2015. (Tr. 42). The ALJ determined that, through the date last insured, Plaintiff suffered from the following severe impairments: narcolepsy, generalized anxiety disorder, dysthymic disorder, and cannabis abuse. (*Id.*). In addition, the ALJ determined that Plaintiff's medically determinable impairments of asthma and gastroesophageal reflux disease (GERD) do not cause more than minimal limitation in her ability to perform basic work activities and are therefore nonsevere. (*Id.*). The ALJ, however, found that, through the date last insured, that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 43).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, [the ALJ] finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot climb ladders, ropes, and scaffolds, and cannot work around hazards, such as unprotected heights or dangerous machinery. As the result of medically determinable mental impairments, the claimant can perform simple repetitive tasks, as well as some moderately complex tasks, in a routine environment where there are infrequent changes and that do not require more than occasional contact with others or high production demands. She has the ability to maintain attention and concentration for at least two-hour periods.

(Tr. 45).

The ALJ then noted:

> In reaching a conclusion regarding whether the claimant is "disabled," consideration has been given to the findings made by the Administrative Law Judge who adjudicated the claimant's prior application. The findings in the decision dated June 23, 2014 have been evaluated in accordance with Social Security Acquiescence Ruling 98-4(6). In the absence of new and additional evidence or changed circumstances, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge decision (*Drummond*).

> The undersigned finds there is no new and material evidence to change the findings of the prior Administrative Law Judge. While the records do document some new evidence, such evidence does not contain findings indicative of significant or material changes from the final findings of the prior decision. Thus, the findings of the prior Administrative Law Judge are adopted as *Drummond* precedent.

(*Id.*).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence and other evidence in the record for the reasons explained in this decision." (Tr. 46).

As for the relevant opinion evidence, the ALJ assigned the state agency reviewing physicians, "great weight," (Tr. 49) as well as the opinions from the state agency reviewing psychologist. (Tr. 50). She assigned "little weight" to the opinions of physical consultative examiner Judith Brown, M.D., noting that Dr. Brown did not provide a function-by-function analysis regarding the claimant's limitations and, in general, her opinion appears to be based solely on the self-reports of the claimant. Additionally, the ALJ found that Dr. Brown's opinions are not consistent with the overall records, including her own examination, which generally documents normal findings. (Tr. 49).

The ALJ gave "little weight" to Dr. Timothy Walter's opinion. The ALJ determined that even though Dr. Walter was Plaintiff's treating provider and he examined Plaintiff during the relevant time period, Dr. Walter's opinion was dated after the expiration of Plaintiff's date last insured and it was difficult to determine what portions of the opinion, if any, referenced the relevant time period. (Tr. 49–50). The ALJ also noted that Dr. Walter failed to document other mental limitations that the record supported. (Tr. 50). The ALJ further explained that the objective evidence also did not support Dr. Walter's opinion regarding Plaintiff's absences, need for breaks,

or avoidance of operating motor vehicles. (*Id.*).

The ALJ also assigned "little weight" to the opinions of Judith Luscher, PA-C, noting she is not an acceptable medical source, and her opinions were provided nearly two years after the expiration of Plaintiff's date last insured "with no indication that such opinions encompass the relevant time period as Ms. Luscher did not begin seeing the claimant until after that time." (*Id.*).

"Some weight" was given to the opinions of psychological consultative examiner, Marc Miller, Ph.D., explaining

> [t]hough he did not provide a function-by-function analysis or use vocationally relevant terminology, the opinions of Dr. Miller are generally consistent with the overall record and the finding that the claimant has no more than moderate "paragraph B" limitations (Exhibits B4F, B8F). Nothing provided in Dr. Miller's opinions suggests greater limitations than provided in the prior decision, thus to the extent that the terminology is inconsistent, such limitations have been refined using the proper terminology in the adopted residual functional capacity herein.

(*Id.*).

Relying on prior ALJ findings, ALJ Southern concluded that Plaintiff was unable to perform her past relevant work as a receiving clerk or stock clerk, as well at other jobs that exist in significant numbers in the national economy. (Tr. 50–51). Relying on the vocational expert's testimony, the ALJ found that, through her date last insured, Plaintiff could perform other jobs in the national economy such as floor waxer, dishwasher or kitchen worker. (Tr. 51–52). She therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act, at any time from her alleged onset date to her date last insured. (Tr. 52).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III.   DISCUSSION

Plaintiff argues that the ALJ erred when she discounted the opinions of Plaintiff's treating physician and physician assistant. (Doc. 7 at 7–12). Further, Plaintiff contends, the case should be remanded for the consideration of new and material evidence pursuant to Sentence Six of 42 U.S.C. Section 405(g). (*Id.* at 12–16). The Undersigned addresses each of these arguments in turn.

#### A.   Opinion Evidence

Plaintiff challenges the ALJ's analysis of the opinions of Dr. Walter, her treating physician, and Ms. Luscher, her physician's assistant. (Doc. 7 at 7–12).

##### 1.   Dr. Walter

The ALJ gave Dr. Walter's opinion little weight because his opinions were provided after Plaintiff's date last insured and because they were not supported by objective medical record. (Tr.

7

49–50).  Plaintiff maintains this was error.

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The treating physician rule and the good reasons rule together create what has

8

been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Relevant here, a claimant must rely on evidence of disability from before the date last insured to show that he was disabled during the relevant time period. *See Thomas v. Comm'r of Soc. Sec.*, No. 2:18-CV-108, 2019 WL 2414675, at *3 (S.D. Ohio June 7, 2019). Consequently, "[e]vidence of a disability obtained after the date last insured is usually unpersuasive." *Id.* (citing *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004)). To the extent that evidence from after the date last insured is relevant, it "'must relate back to the claimant's condition prior to the expiration of [the] date last insured.'" *Thomas*, 2019 WL 2414675, at *3 (quoting *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)).

Reviewing Dr. Walter's opinion, the ALJ acknowledged that he "examine[d] the claimant during the relevant timer period," but emphasized that his "opinions [were] dated after the expiration of the claimant's date last insured." (Tr. 49–50). As a result, she observed, it was difficult to determine "what portions, if any, of his opinions reference[d] the relevant time period." (Tr. 50). Nonetheless, she reviewed Dr. Walter's opinion and compared it to the objective medical record. (*Id.*). Because she concluded that Dr. Walter's opinion was not supported by the medical record, she assigned it little weight. (Tr. 49).

The Undersigned finds no error in the ALJ's analysis of Dr. Walter's opinion. Claimant's date last insured was December 31, 2015, (Tr. 42), and Dr. Walter issued his sleep Disorders Medical Source Statement on July 7, 2016, (Tr. 380–82). As Plaintiff admits, "there is no indication that the opinions were concerning a particular time frame," and "[t]here is no evidence that their opinions 'relate back' to the relevant time period prior to the date last insured." (Tr. 9). With that concession, it is difficult to understand how the ALJ erred here. *See Thomas*, 2019 WL

9

2414675, at *3.

But even if Dr. Walter's opinion related back to the relevant time period, the ALJ provided good reasons for discounting it. Dr. Walter opined that Plaintiff suffered from excessive daytime sleepiness due to narcolepsy and that she should avoid operating motor vehicles or working near power machines, moving machinery, or other hazardous conditions. (Tr. 381). He further indicated that Plaintiff would need breaks at unpredictable intervals and would have serious limitations being punctual. (Tr. 381–82). Yet, as the ALJ explained, the objective medical record demonstrated otherwise. (Tr. 49–50). Plaintiff had no difficulty being on time for her appointments, and she denied takings naps, having driving difficulties, or having any driving restrictions. (Tr. 50). The ALJ did not err as a result.

    2. *Ms. Luscher*

Like Dr. Walter, the ALJ gave Ms. Luscher's opinion little weight, reasoning that she was not an acceptable medical source and that she offered her opinion almost two years after Plaintiff's date last insured. (Tr. 50). Plaintiff challenges this analysis.

As a physician's assistant, Ms. Luscher is an "other source" under the Regulations. *See* SSR 06-03P (S.S.A.), 2006 WL 2329939, at *2.[2] "Other sources" cannot establish the existence of a medically determinable impairment but "may provide insight into the severity of the impairment and how it affects the individual's ability to function." *Id.* These opinions are "important" and should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Id.* at *4–5. ALJs may also consider the degree to which the source presents relevant evidence to support the opinion, whether the source has a particular expertise,

---

[2] This regulation has been rescinded. It still applies, however, to claims (like this one) filed before March 27, 2017. 20 CFR § 404.1527.

10

and "any other factor supporting or refuting the opinion." *Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737, 757–58 (N.D. Ohio 2014) (internal quotation marks and citations omitted). But there is no "reasons-giving requirement" for non-treating source opinions. *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016).

Ms. Luscher completed her Sleep Disorders Medical Source Statement on November 3, 2017. (Tr. 409–11). But, as with Dr. Walter, "[t]here is no evidence that [her] opinions 'relate back' to the relevant time period prior to the date last insured." (Tr. 9). The ALJ did not err in discounting her opinion as a result. *See Thomas*, 2019 WL 2414675, at *3.

**B.    Sentence Six Remand**

Plaintiff also argues that the Court should remand this case based on new and material evidence. (Doc. 7 at 12–16).

"Evidence which was not a part of the record on which the Commissioner's final decision was based may not be considered as part of the administrative record for purposes of judicial review." *Cocroft v. Colvin*, No. 2:13-CV-729, 2014 WL 2897006, at *2 (S.D. Ohio June 26, 2014) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Stevens v. Astrue*, 839 F. Supp. 2d 939, 951 (S.D. Ohio 2012)). "Judicial review is confined to the evidence that was available to the Commissioner." *Cocroft*, 2014 WL 2897006, at *2 (citing *Hollon ex rel. Hollon*, 447 F.3d at 487). "Evidence submitted in the first instance to the district court may only be considered in determining whether remand is appropriate pursuant to sentence six of 42 U.S.C. § 405(g)." *Cocroft*, 2014 WL 2897006, at *2 (citing *Stevens*, 839 F. Supp. 2d at 951). Plaintiff must show "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g).

Plaintiff asserts that Ms. Luscher's November 28, 2018 addendum to her medical source

11

statement is new and material evidence that warrants a Sentence Six remand. (Doc. 7 at 12–16). Even if this document could be considered new and material evidence, Plaintiff has failed to demonstrate good cause for her failure to introduce that evidence in her prior proceeding. Instead, Plaintiff argues that the addendum "was not submitted prior to the administrative hearing because there was no way of knowing that the ALJ would evaluate the record the way she did." (*Id.* at 15). But that is always true of any administrative or judicial determination. No party knows how a decisionmaker will evaluate the record, and, if accepted, this excuse would justify a Sentence Six remand in nearly every case. Plaintiff has failed to demonstrate why she was unable to present Ms. Luscher's addendum to the Commissioner in her prior proceedings. Her request for a Sentence Six remand is, therefore, without merit.

## IV.   CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V.   PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  June 22, 2020                                  /s/ Kimberly A. Jolson
                                                           KIMBERLY A. JOLSON
                                                           UNITED STATES MAGISTRATE JUDGE