# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LISA TERKEURST,

        Plaintiff,    :    Case No. 2:19-cv-4566

- vs -    Judge Sarah D. Morrison
    Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF SOCIAL
SECURITY,

    :

        Defendant.

## OPINION AND ORDER

Lisa Terkeurst ("Plaintiff") brings this action under 42 U.S.C. § 405(g) and § 1383(c) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits. This matter is before the Court on Plaintiff's Objection (ECF No. 13) to the Report and Recommendation ("R&R") issued by the United States Magistrate Judge on June 22, 2020 (ECF No. 12), recommending that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed an application for Title II Social Security Benefits on December 3, 2015 alleging disability since June 24, 2014. (Admin. Record, 61, 261, ECF No. 6.) Plaintiff's claims were denied initially on April 7, 2016, and upon reconsideration on July 6, 2016. (*Id.* at 186–88,

1

192–94.) She filed a Request for Hearing on August 24, 2016. (*Id.* at 199.)

Administrative Law Judge Noceeba Southern ("ALJ") held an administrative hearing on March 27, 2018. (*Id.* at 58–77.) On July 27, 2018, the ALJ issued an unfavorable decision. (*Id.* at 36–57.) Plaintiff requested review of the administrative decision to the Appeals Council, which denied her request and adopted the ALJ's decision as the final decision of the Commissioner. (*Id.* at 1–6.)

Plaintiff filed this case on October 14, 2019 (ECF No. 1), and the Commissioner filed the administrative record on December 18 (ECF No. 6). Plaintiff filed a Statement of Specific Errors (ECF No. 7), and the Commissioner responded (ECF No. 11). On June 22, 2020, the Magistrate Judge issued her Report and Recommendation. (ECF No. 12.) After a thorough analysis, the Magistrate Judge recommended affirming the Commissioner's non-disability finding. On July 6, Plaintiff timely filed an Objection to the Magistrate Judge's R&R. (ECF No. 13.)

### B. Relevant Record Evidence

#### 1. Hearing Testimony

Plaintiff, represented by counsel, appeared and testified at the administrative hearing. At the outset, the ALJ noted that Plaintiff had previously filed and been denied disability benefits and she was bound by the previous ALJ's decision absent new information. (R. at 61.) The ALJ also confirmed with Plaintiff's counsel that the date last insured was December 31, 2015. (*Id.*)

Plaintiff stated that since her testimony at the previous hearing, her alertness changed. (*Id.* at 64.) She described this as "zoning out at lot" or "sleeping with [her] eyes open." (*Id.*) Plaintiff testified that this makes it hard for her to stay focused on what she needs to do. (*Id.*) She explained that her doctor increased her medication dosage in mid-2016 to help with this issue, but it was lowered thereafter due to the side effects it was causing, namely heart palpitations and

2

difficulty falling sleeping. (*Id*. at 67, 69–70.) Plaintiff testified that she drives "[m]aybe once a week" just a short distance and her typical day includes getting up, taking her medicine, watching television until her medicine kicks in, and doing chores around the house. (*Id.* at 70–71.) She qualified that she often dozes off watching television. (*Id.* at 71.) She does read, which helps her fall asleep. (*Id.*)

Plaintiff testified that she has not worked since 2011. (*Id.* at 63.) According to Plaintiff, she is unable to work due to the sleepiness she experiences and the amount of medicine that she needs to take to get through the day. (*Id.* at 67.) She indicated that when she is taking more medication, she forgets things, including how she gets to physical locations and how to do routine tasks. (*Id.* at 68.) However, medication does take the edge off her narcolepsy. (*Id.* at 72.) Plaintiff testified that while she rarely called off, she was consistently late for her job at Sam's Club. (*Id.* at 68–69.) She also has difficulty being punctual at appointments. (*Id.* at 69.) This results in Plaintiff getting ready hours before she needs to be anywhere. (*Id.*)

Plaintiff testified that she was diagnosed with narcolepsy and cataplexy in 2002 or 2004. (*Id.* at 65.) She described that she suffers from sleep paralysis, which occurs when she wakes up in the morning. (*Id.* at 64.) Plaintiff could not explain why her experience with symptoms of these disorders were not in any of her doctor's records, other than she was told "it wasn't something that they can test for." (*Id.* at 65.) Plaintiff stated that she is also having problems with anxiety and tension. (*Id.* at 72.)

Vocational Expert Connie O'Brien ("VE') also testified. The VE confirmed that Plaintiff has past work as a receiving clerk at the skilled, medium exertion level and as a stock clerk at the semiskilled, heavy exertional level. (*Id.* at 63.) The VE also verified that the prior ALJ had determined that Plaintiff was unable to perform past relevant work based on the testimony given

at that time. (*Id.*) The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[1] to the VE that required Plaintiff to perform at all exertional levels but allowed Plaintiff to avoid climbing ladders, ropes, and scaffolds, and dangerous hazards such as unprotected heights and machinery. (*Id.* at 73–74.) The same hypothetical did require Plaintiff to perform simple, repetitive tasks, as well as some moderately complex tasks in a routine environment, no more than occasional contact with others, and the ability to maintain attention and concentration for at least two-hour periods. (*Id.* at 74.) The VE testified that given these parameters, Plaintiff could perform work as a floor waxer, dishwasher, and kitchen worker. (*Id.*)

The ALJ posed a second hypothetical with the same limitations as the first but in addition, Plaintiff would be allowed to take naps or walk around at break time, and have the ability to work with a sit/stand and would need a sit/stand every two hours for ten minutes. (*Id.* at 74–75.) The VE testified that Plaintiff would be able to perform the same work as the first hypothetical but there would be less jobs available in the national economy. (*Id.* at 75.) The ALJ posed a third hypothetical with the same limitations as the second hypothetical but in addition, Plaintiff would be absent one day a month and late for work one day a month, and need an additional break. The VE testified that an additional break would be an accommodation and that missing work and being late two days a month would likely be work preclusive. (*Id.* at 76.) The VE also confirmed that Plaintiff's past work could not be performed for the second and third hypotheticals. (*Id.*)

### 2. Dr. Walter's Medical Opinions

Plaintiff first saw Dr. Timothy Walter, Capitol Sleep Medicine, on November 19, 2014.

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

(*Id.* at 376.) Dr. Walter noted that Plaintiff was diagnosed with narcolepsy without cataplexy over 10 years ago. (*Id.*) He described the various problems Plaintiff reported while taking different medications for the disorder. (*Id.*) Dr. Walter concluded that Plaintiff's clinical history, symptoms, and physical exam findings were consistent with a diagnosis of sleep disordered breathing. (*Id.* at 378.) Dr. Walter advised Plaintiff to exercise caution while driving and exercise regularly. (*Id.*) He also recommended a sleep study and prescribed her new medication. (*Id.*)

Dr. Walter next saw Plaintiff on February 24, 2015. (*Id.* at 372.) Dr. Walter noted that Plaintiff was unable to afford the medication he prescribed and the sleep study recommended. She complained of snoring, awaking short of breath, and depression. (*Id.*) Dr. Walter recommended that Plaintiff continue to take her originally prescribed medication, advised her to exercise extreme caution driving, and requested she follow up when she could have a sleep study performed. (*Id.* at 374.) He also noted a diagnosis of obstructive sleep apnea. (*Id.*) During her visit on August 26, 2015, Dr. Walter noted that Plaintiff complained of feeling tense, and indicated that she would be able to afford the recommended medication in November. (*Id.* at 369.)

On July 7, 2016, Dr. Walter filled out a Sleep Disorders Medical Statement. (*Id.* at 380.) Dr. Walter indicated Plaintiff's diagnosis as narcolepsy without cataplexy causing excessive daytime sleepiness, which is managed by medication. (*Id.*) Dr. Walter noted that Plaintiff's physical and mental impairments were reasonably consistent with the symptoms described and that Plaintiff's impairments lasted or could be expected to last at least 12 months. (*Id.* at 381.) Dr. Walter described Plaintiff's limitations as needing to avoid power machinery, limiting operation of motor vehicles, needing breaks at unpredictable intervals in the workday, and inability to be punctual within customary, strict tolerances and sustain attention for an extended

5

period of time. (*Id.* at 381–82.) Dr. Walter also opined that Plaintiff's impairments were likely to produce good and bad days, and cause an absence from work about twice a month. (*Id.* at 382.)

### C. The ALJ's Decision

The Magistrate Judge accurately described the ALJ's decision. (*See* R&R, 4–6, ECF No. 12.) At step four of the sequential process,[2] the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date of last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot climb ladders, ropes, and scaffolds, and cannot work around hazards, such as unprotected heights or dangerous machinery. As the result of medically determinable mental impairments, the claimant can perform simple repetitive tasks, as well as some moderately complex tasks, in a routine environment where there are infrequent changes and that do not require more than occasional contact with others or high production demands. She has the ability to maintain attention and concentration for at least two-hour periods.

(R. at 45.) The ALJ also noted that:

> Little weight is . . . given to the opinions of the claimant's treating provider Dr. Walter . . . . Though Dr. Walter did examine the claimant during the relevant period, the undersigned notes that the opinions provided by Dr. Walter are dated after the expiration of the claimant's last date insured so it is difficult to determine what

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:
    1. Is the claimant engaged in substantial gainful activity?
    2. Does the claimant suffer from one or more severe impairments?
    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?
*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

portions, if any, of his opinions reference the relevant time period.

(*Id.* at 49–50.)

Relying on the VE's testimony, the ALJ determined that, through her date last insured, Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 52.) She therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.*)

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

## III. ANALYSIS

In her Statement of Specific Errors, Plaintiff asserts two assignments of error, only one of which forms the basis of her Objection to the Magistrate Judge's R&R. Plaintiff contends that the ALJ erred when she discredited Dr. Walter's medical statement because it was dated after the date last insured even though Plaintiff was treated for narcolepsy throughout the relevant time period. Plaintiff argues that the Magistrate Judge erred when she reached the same conclusion.

7

"Insured status is required to receive social security benefits." *Thomas v. Comm'r of Soc. Sec.*, No. 2:18-cv-108, 2019 WL 2414675, at *3 (S.D. Ohio June 7, 2019). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F'Appx 841, 845 (6th Cir. 2004). In order to be considered, such evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F'Appx 478, 480 (6th Cir. 2003). Here, there is no dispute that Plaintiff's date last insured was December 31, 2015. Dr. Walter's medical statement is dated July 7, 2016, approximately seven months after Plaintiff's date last insured. While Plaintiff argues that nothing in the record suggests that Dr. Walter's opinions would have changed after the date last insured, it is also true that nothing in the record indicates Dr. Walter's medical statement relates to something before the date last insured. Plaintiff acknowledges the latter but nonetheless asks the Court to speculate as to the former. (*See* R&R, 9.) The Court declines to do so. As this Court has previously explained, it does not matter whether Dr. Walter treated Plaintiff previously: "anything past the date last insured does not carry weight in a disability determination." *Thomas,* 2019 WL 2414675, at *3.

Moreover, Plaintiff's statement that "[e]ven the Magistrate Judge acknowledged that there was evidence that Dr. Walter's opinions related back to the relevant time period" is patently untrue. (Obj., 2, ECF No. 13.) Rather, the Magistrate Judge explained that while "the ALJ acknowledged that [Dr. Walter] 'examine[d] the claimant during the relevant time period,'" she "emphasized that his 'opinions [were] dated after the expiration of the claimant's date last insured.'" (R&R, 9 (quoting R. at 49–50).)

Accordingly, the Court finds, as did the Magistrate Judge, that the ALJ properly weighed Dr Walter's medical statement and concluded that Plaintiff was not disabled. Plaintiff's

8

Objection is **OVERRULED**.

IV. **CONCLUSION**

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objection to the Report and Recommendation of the Magistrate Judge is without merit. The Court, therefore, **OVERRULES** Plaintiff's Objection (ECF No. 13), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 12), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE